## INDUSTRIAL COMMISSION OF OHIO v. LIKENS.

*Workmen's compensation—Daughter, living with husband, not "dependent" of her father, when—Charge to jury—General exception covers charge given and refusal to correct charge, when.*

1. A daughter was married and living with her husband, and it was not necessary that she receive anything from her father by way of support and maintenance in order that she might have the ordinary necessities of life according to her class and position, and her father, who was a widower and never lived in the home of the daughter, and was under no legal obligation to support her, during a period of three years visited the daughter about once a month and usually gave her from $5 to $25, and frequently bought her clothes and some clothes for her son and made her presents for her personal enjoyment, during which time the daughter's husband repaid to the father $1,100, with interest, which he had borrowed from the father; *held*, that, if the jury found that what the father did for his daughter was not because he recognized any moral obligation to contribute to her support, but was intended merely as gifts to her and her family, to be used not necessarily for support, and that by the stopping of said gifts by the death of the father the actual means of living of said family in the rank and station in which they were living was not affected, said daughter was not a "dependent" of her father as that term is used in the Constitution and laws of the state in reference to compensation for workmen and their dependents.

2. Where the court is asked to correct the charge as given, the request being made immediately following the giving of the charge, a general exception to the charge taken immediately thereafter is an exception, not only to the charge as given, but to the refusal to change the charge as requested.

(Decided April 28, 1926.)

ERROR: Court of Appeals for Summit county.

*Mr. C. C. Crabbe,* attorney general, *Mr. G. W. Booth,* prosecuting attorney, *Mr. R. R. Zurmehly,* and *Mr. H. W. Slabaugh,* for plaintiff in error.

*Messrs. Musser, Kimber & Huffman,* for defendant in error.

WASHBURN, J. The record in this case discloses that Laura M. Likens filed an application before the Industrial Commission, seeking to be declared partly dependent upon her father, Stephen D. Scoutten, who was killed on November 27, 1923, while in the employment of the state, it being conceded that if she was a dependent within the meaning of the law she would be entitled to participate in the fund being administered by the Industrial Commission.

It is provided in the Constitution (Section 35, Article II), that for the purpose of providing compensation for workmen "and their dependents," for death or injuries occasioned in the course of their employment, laws may be passed by the Legislature establishing a state fund and determining the terms and conditions upon which payment shall be made therefrom, and that a board may be established and empowered to collect, administer, and distribute such fund and "determine all rights of claimants thereto."

Pursuant to that provision, the Legislature established what is known as "the Industrial Commission of Ohio," and charged it with the duty of determining who are dependents, but in making that determination the commission is governed by laws enacted by the Legislature.

Section 1465-82, General Code, provides that

certain persons shall be presumed to be "wholly dependent," and then provides:

"The question of dependency, in whole or in part, shall be determined in accordance with the facts in each particular case existing at the time of the injury resulting in the death of such employe, but no person shall be considered as dependent unless a member of the family of the deceased employe, or bears to him the relation of husband or widow, lineal descendant, ancestor or brother or sister."

The Legislature has further provided that if the commission determines that a certain applicant is not a dependent, such applicant may, within a certain time, by following a certain procedure, appeal to the courts for a determination of the question of his dependency. Section 1465-90, General Code.

The state insurance fund thus created is in the nature of a trust fund, and while none who are fairly entitled to share therein should be excluded, it is also important that the fund should not be disbursed to those who are not within the class for whose benefit the fund was created.

Recognizing the importance of this, and the great responsibility that is placed upon it, the Industrial Commission, observing as far as possible a uniform policy, has attempted to discharge its duty to those who contribute to the fund and those for whose benefit it was created by excluding from the benefits thereof those who are not entitled thereto.

In the case at bar, the commission determined that the applicant was not a partial dependent; on appeal to the common pleas, and upon the same

.evidence, the jury found that she was a partial dependent.

The Legislature has not provided a definite guide by which to determine who are partly dependent, and there is a great diversity of opinion, as shown by the decisions of courts in other states, as to what element or elements are to be given controlling effect in determining that question.

In some instances a legal obligation to support is considered sufficient, even though that obligation was not being discharged by the deceased, while other cases regard a moral obligation of support, which is being discharged, as sufficient to establish dependency. Some cases give great weight to the fact that the deceased person was living in the family of the applicant and contributing to the support of the applicant, even though there was no legal or moral obligation to do so; in other cases the financial condition of the applicant, whether or not he needed the support which he received from the deceased in order that he might have the ordinary necessities of life according to the standard of living of his class and position in life, is regarded as of controlling importance; another element which is considered important is whether, there being no legal obligation to support, the applicant received from the deceased sums of money occasionally, which were mere gifts and not contributions for support, but were really additions to assets.

We make no attempt to enumerate all of the elements which have been considered in determining the question of whether or not a given applicant was a dependent, nor do we deem it necessary to undertake the very difficult task of trying to define

just what will constitute one a dependent under the law.

From the several affidavits filed with the commission by Laura S. Likens, the applicant, it appears that she was the only child of Stephen D. Scoutten, who was killed; that she had been married about 18 years, had a son about 16 years old, and was living with her husband in Akron; that they owned a home, and also a store which they operated; that during the year previous to the death of her father they made sufficient to pay off a debt to the father of more than $1,100; that at the death of the father they were not in debt, but were prosperous, and were living in their home.

Stephen D. Scoutten, the father, whose wife was dead, did not live in the family of the applicant, but lived in another place (in Twinsburg), and the record does not disclose that the father ever lived with the daughter. He was 65 years of age, and worked for the state in the highway department, and the only evidence in the record indicating that the daughter received support from or depended to any extent upon the father for support is the testimony of the daughter to the effect that during the year 1921 she was in good health, had no occupation except that of a housewife, and earned nothing; that during that year her husband earned approximately $145 a month, which was used for the support and living expenses of the family; that the same situation existed for the greater part of the year 1922; that during the year 1923 her husband was engaged in conducting the store, and that from the profits of the store he contributed to the support of the family and paid to her father more than $1,100 of borrowed money; that during said

three years her father visited her every two or three weeks, and when he made those visits gave her from $5 to $25, which she used; that he also frequently bought her clothes and gave her gifts for her personal support and enjoyment, bought some clothes for her son, and also helped her husband with odd jobs about the store; and that the gifts from her father to her during the last three years would amount to $350 to $450 per year. The evidence does not disclose that the living expenses of the family exceeded the earnings of the husband, and it does show that during the last year he paid off an indebtedness of more than $1,100, and interest.

It would not have been manifestly against the weight of the evidence if from this testimony the jury had found the fair and reasonable inference to be that it was not necessary that the applicant should receive anything from her father by way of support and maintenance in order that she might have the ordinary necessities of life according to her class and position, and that what the father did for her was not done because of any legal obligation, or because he recognized any moral obligation to contribute to her support, but that what the father did was merely to make gifts to the family of his daughter, to be used not necessarily for support, and that by the stopping of said gifts the actual means of living of said family in the rank and station in which they were living was not affected, but its only effect was to prevent said family from increasing the assets of the family, as had been done previous to the death of applicant's father; and that their capital investment, rather

than their living, was affected by the death of the father.

In view of this situation it is the claim of the plaintiff in error that there was error in the charge of the court, and that such error was emphasized by the court's refusal, after the general charge had been given, to further charge, said refusal being in the presence of the jury.

The court said to the jury that "a dependent person is one who derives support from another." If that was all that the court said to the jury, it clearly would have been error, but later in the charge the court said to the jury that "a dependent is one who looks to another for support, one dependent upon another for the ordinary necessities of life for a person of his class and position * * * but he cannot demand compensation merely to add to his savings or investments," and further said that "dependency does not depend on whether the alleged dependents could support themselves without decedent's earnings, * * * but on whether they were in fact supported in whole or in part by such earnings under circumstances indicating an intention on the part of the deceased to furnish such support."

In view of the fact, as already stated, that the jury might have reasonably found that what was given by the father to the claimant was given to her merely as gifts and presents, not as support necessary for one of her class and position in life, and in view of the charge as already quoted, it was error for the court to refuse to charge specifically on the subject of "gifts and presents" when the court's attention was particularly called to that omission, as was done, as shown by the record.

As applied to this case, and in view of what had been charged, the request made was substantially correct, and in any event the court's refusal to charge fully on that phase of the case was error.

The court also charged that: "The ordinary instructions as to credibility of witnesses are not required in this case, nor those relating to the weight to be given to the testimony of witnesses."

There being no witness except the applicant, and her evidence being simply her affidavits filed with the commission, in which she had sworn several times that she was a dependent, and at another time that she was not a dependent, and she having sworn that her father was contributing to her support during the very time they were paying to the father money which they had borrowed from him, and also paying him interest thereon, the jury should have been left free to believe or not believe any part of her testimony.

After the charge of the court, and in the presence of the jury, the court's attention was called to this matter, and while the request made to the court on this subject is not, as shown by the record, as clear as it should have been, it is quite probable that the jury did not understand that they were permitted to weigh her testimony and take into consideration the fact that in her first affidavit she swore that she was not a dependent, but thought that they were required to believe all she said in reference to her receiving support, without regard to the reasonableness of such statements.

Our attention is called to the fact that plaintiff in error after requesting said additional charges and changes in the charge did not specifically except to the failure of the court to comply with said

requests. The record discloses that these requests were made after the general charge had been given, and that they related to claimed omissions in the charge, and to statements which were claimed to be misleading, because incomplete, whereupon plaintiff in error at once took a general exception to the charge.

We hold that where the court is asked to correct the charge as given, the request being made immediately following the giving of the charge, a general exception to the charge, taken immediately thereafter, is an exception not only to the charge as given but to the refusal to change the charge as requested.

We are further of the opinion that, considering the age of the father and his probable length of life, the award made in this case was excessive, and in view of this fact and all of the circumstances we feel that it is our duty to hold that the errors in the charge were prejudicial.

*Judgment reversed and cause remanded.*

PARDEE, P. J., and FUNK, J., concur.